FRANK CHAULÓN, demandante y apelante, *v.* ANGÉLICA CHABRÁN, demandada y apelada.

Número 11441.
*Sometido:* 2 de abril de 1956. *Resuelto:* 31 de mayo de 1956.

*Federico Valladares,* abogado del apelante; *Angélica Chabrán,* por su propio derecho.

EL JUEZ PRESIDENTE SEÑOR SNYDER emitió la opinión del Tribunal.

Este caso está estrechamente relacionado con el de *Chabrán* v. *Méndez,* 74 D.P.R. 768. En consecuencia, expondremos primeramente lo que ocurrió en el mismo. En él confirmamos una sentencia que declaró sin lugar una demanda de filiación radicada en 1950 por Angélica Chabrán Hernández, en representación de su hijo menor, Zoilo Eduardo Chabrán, contra Zoilo Méndez Ríos.

Nuestro razonamiento en el caso de *Méndez* fué el siguiente: Frank Chaulón se divorció de Angélica Chabrán el

26 de enero de 1945. De conformidad con el art. 113 del Código Civil, ed. de 1930, 31 L.P.R.A. sec. 461, Zoilo Eduardo, a quien Angélica dió a luz el 23 de junio de 1945, era presunto hijo legítimo de Chaulón y de Angélica. De acuerdo con los arts. 116 y 117 del Código Civil, 31 L.P.R.A. secs. 464 y 465, solamente el marido Frank Chaulón, o sus legítimos herederos, podían impugnar la legitimidad del hijo; y era requisito previo para la acción de filiación contra Méndez la existencia de una sentencia válida a favor del demandante en la acción de impugnación de legitimidad.([1]) Frank Chaulón radicó tal pleito sobre impugnación de legitimidad y obtuvo sentencia declarando que Zoilo Eduardo era hijo natural de Angélica; pero esta sentencia era nula porque el menor, parte indispensable en el pleito, no fué incluído como demandado.([2]) Conforme a esto, la desestimación de la demanda de filiación fué confirmada por este Tribunal *por haber sido radicada prematuramente.*

En el caso de *Méndez* dijimos claramente a la página 784: "El demandado no ha ganado este pleito porque la corte sentenciadora ya ha resuelto en los méritos que Zoilo E. Chabrán no es su hijo natural. Por el contrario, la única razón por la cual sale victorioso en éste es debido a que el art. 113 del Código Civil levanta una presunción de legitimidad; que bajo el artículo 116 solamente el marido o sus legítimos herederos

---

([1]) *Cf. Agosto* v. *Javierre,* 77 D.P.R. 471, discutido más adelante.

([2]) En el caso de *Méndez* permitimos al demandado Zoilo Méndez hacer un ataque colateral contra la sentencia en el caso de legitimidad. Dijimos a las págs. 775–76: "Una sentencia puede atacarse colateralmente por una persona que no fué parte en el pleito, por el fundamento de que la misma es nula por haber sido dictada por una corte que carecía de jurisdicción sobre una parte indispensable, siempre que dicha sentencia afecte adversamente a tal persona." Añadimos a la pág. 777: ". . . si bien Zoilo Méndez no fué parte en el pleito sobre impugnación de legitimidad . . . , cuando se invoca la sentencia a favor del demandante en dicho pleito *como condición precedente necesaria* al pleito de filiación en su contra . . . , queda afectado adversamente por dicha sentencia y por consiguiente tiene derecho a atacar colateralmente dicha sentencia probando, de serle posible, que la referida sentencia es nula porque el menor, parte indispensable, nunca fué incluído como demandado en el pleito sobre impugnación de legitimidad." (Bastardillas nuestras.)

pueden impugnar dicha legitimidad; y que la demandante no puede presentar una sentencia válida declarando que el hijo es ilegítimo. En su consecuencia existe un impedimento a la acción de filiación *en este momento*. En pocas palabras, el presente caso de filiación es prematuro. Pero la situación legal puede cambiar: el impedimento contra una acción de filiación puede eliminarse en el futuro mediante una sentencia válida en un caso de impugnación de legitimidad. De ocurrir esto, bajo el principio que acabamos de enunciar, la doctrina de *res judicata* no impediría una nueva acción de filiación por la demandante contra el demandado, basada en una situación legal cambiada, siempre y cuando no esté prescrita en virtud del art. 126 del Código Civil."

Dijimos a la página 785 que "[p]or consiguiente, el menor no puede proseguir con el asunto a menos y hasta que los herederos legítimos de Frank Chaulón tomen alguna acción bajo el artículo 116." Entonces hicimos algunos comentarios a las págs. 785–788, *los cuales gobiernan el caso ante nos ahora:*

"Nuevamente debido a que se trata del status de un menor, creemos conveniente hacer algunos comentarios que serán pertinentes solamente si los herederos legítimos de Frank Chaulón intentan hacer valer sus derechos bajo el artículo 116. Convenimos, según resolvió la corte inferior, que no hay forma de 'corregir la sentencia' en el caso de impugnación de legitimidad, sin enmendar las alegaciones, en vista de que no se incluyó a Zoilo E. Chabrán como demandado en el pleito original. Por otro lado, cuando está envuelto el status de un menor, creemos que a las partes debe dársele toda oportunidad razonable de presentar prueba sobre los hechos y de obtener una decisión en los méritos. Por tanto no vemos objeción alguna a que se renueve la contención de los herederos legítimos de Chaulón de que el hijo no es legítimo. Si uno de los herederos rehusa ser demandante en tal pleito sobre impugnación de legitimidad, no vemos motivo alguno por el cual esto impida a los otros herederos de proseguir con su acción bajo el art. 116 del Código Civil. Habiéndose cumplido la política restrictiva de la ley que hay detrás del artículo 116, requiriendo que por lo menos uno de los

herederos comparezca voluntariamente en tal pleito, los otros herederos pueden, como en otras situaciones, ser incluídos como demandados si rehusaren comparecer como demandantes. Véase la Regla 19 (*a*) de las de Enjuiciamiento Civil; *Vega* v. *Cía. Popular de Transporte,* 72 D.P.R. 525. También, nuestra decisión de que la sentencia en el caso sobre impugnación de legitimidad es nula, no elimina la demanda en dicho caso. En su consecuencia, los herederos de Frank Chaulón o uno de ellos, de así optarlo, pueden continuar el pleito sobre impugnación de legitimidad que inició Frank Chaulón. O dichos herederos o alguno de ellos puede iniciar un nuevo pleito impugnando la legitimidad de Zoilo E. Chabrán. Pero, de cualquier modo, como ya se ha indicado, Zoilo E. Chabrán sería una parte demandada indispensable. Y suponemos que la madre admitiría, según lo admitió en su contestación en el pleito original sobre impugnación de legitimidad, que de hecho el menor no era legítimo debido a la imposibilidad física de acceso a ella por parte de su marido durante el período crucial. Bajo dichas circunstancias, sería la mejor práctica para el tribunal sentenciador nombrarle al menor un defensor judicial más bien que permitirle a la madre que lo represente, en vista del posible conflicto bajo dichas circunstancias de intereses de la madre y del menor. Véase la Regla 17 (*f*) de las de Enjuiciamiento Civil y *Biaggi* v. *Corte,* [68 D.P.R. 407] supra. Y para evitar la posible contención de que una sentencia basada en hechos admitidos en la contestación era en efecto una transacción en relación con el status, en violación del art. 1713 del Código Civil, la corte sentenciadora debe recibir testimonio sobre las cuestiones en controversia en el caso y llegar a conclusiones de hecho basadas en el mismo.

"No hemos pasado por alto la posibilidad de que en cualquier pleito futuro sobre impugnación de legitimidad, los demandados pueden alegar que la causa de acción está prescrita. Al decidir la moción de sentencia sumaria, la sección de Humacao no pasó sobre la contención héchale por el demandado, que no se ha renovado ante nos por el demandado en esta apelación, de que la causa de acción en el pleito de filiación ha prescrito. Tampoco hemos pasado sobre dicha cuestión, ya que la regla es que aun cuando apareciera de las alegaciones que la acción pudiera estar prescrita, una sentencia no puede ser atacada colateralmente por ese fundamento. Pueden haber existido varias razones, incluyendo la de renuncia, por las cuales el tribunal que dictó la sentencia resolvió que no era aplicable la defensa de prescripción.

*Herron* v. *Dater,* 120 U. S. 464, 477; *Palmer* v. *Board of Chosen Freeholders,* 71 Atl. 285 (N. J., 1908); *Head* v. *Daniels,* 15 Pac. 911 (Kans., 1887). Véanse también por analogía, *Colt* v. *Colt,* 111 U. S. 566; *Associated Oil Co.* v. *Mullin,* 294 Pac. 421 (Cal., 1930); *Schodde* v. *United States,* 69 F.2d 866 (C. A. 9, 1934); *Capper* v. *Short,* 11 S.W.2d 717 (Ky., 1928).

"Ya que hemos discutido otros aspectos de la litigación que concebiblemente puede surgir en el futuro en relación con una impugnación de la legitimidad de Zoilo E. Chabrán en el caso pendiente sobre impugnación de legitimidad o en un nuevo caso, debemos añadir que el curso a seguir sobre la cuestión de prescripción, sobre la cual no expresamos opinión alguna, debe ser decidido exclusivamente por las verdaderas partes interesadas. *Cf. Fuentes* v. *Tribunal de Distrito,* [73 D.P.R. 959] supra; *Meléndez* v. *Iturrondo,* [71 D.P.R. 60] supra; *Bithorn* v. *Santana,* 68 D.P.R. 300. Por ejemplo, suponemos *argüendo* que el término prescriptivo ha expirado. Aun bajo dichas circunstancias toca al defensor judicial de Zoilo E. Chabrán determinar si se cumplirían mejor los intereses del menor renunciando a la prescripción. Esta es una cuestión sobre la cual Zoilo Méndez no puede ser oído en el caso sobre impugnación de legitimidad. Aun cuando éste radicara una moción de intervención en dicho caso y le fuera declarada con lugar, podría Méndez intervenir a lo sumo para evitar una conclusión, que no es apropiada en el caso sobre impugnación de legitimidad, al efecto de que él es el padre del menor. Méndez quizás podría tener derecho a alegar que dicha cuestión no debe adjudicarse en el pleito sobre impugnación de legitimidad. Véase *Cubano* v. *Del Valle,* [69 D.P.R. 579], supra. Pero no puede intervenir en la verdadera cuestión ante el tribunal, la legitimidad del menor, incluyendo tales cuestiones como si el derecho del marido o de sus herederos legítimos a impugnar la legitimidad está prescrito, o si los demandados pueden renunciar a tal defensa de prescripción."

La discusión que precede hace posible enfocar debidamente este caso. De conformidad con el lenguaje del caso de *Méndez,* antes citado, Frank Chaulón, hijo, (³) como uno de los herederos legítimos de Frank Chaulón y representado por un defensor judicial, solicitó y obtuvo permiso del Tribunal

---

(³) Si bien de las alegaciones aparece su nombre simplemente como Frank Chaulón, le hemos añadido el "hijo" para evitar confundirlo con su padre.

Superior para radicar una demanda enmendada en el pleito de legitimidad, sustituyéndose por su padre ya fallecido como parte demandante e incluyendo—en adición a Angélica que era la demandada original—a Zoilo Eduardo, representado por un defensor judicial, y a María Elisa Chaulón como partes demandadas. María Elisa es la otra heredera legítima de Frank Chaulón, padre. Fué incluída como demandada porque se negó a acompañar a Frank, hijo, como parte demandante en la demanda enmendada.

Ninguno de los demandados contestó. María Elisa no compareció a la vista. El defensor judicial de Zoilo Eduardo y su abogado comparecieron. Dicho abogado, a nombre del defensor judicial, anunció a la corte que éste aceptaba las alegaciones de la demanda. Aun cuando Angélica Chabrán no radicó contestación a la demanda enmendada, aquélla compareció a la vista y declaró.

Angélica Chabrán y otros testigos, incluyendo los defensores judiciales de Zoilo Eduardo y de Frank Chaulón, hijo, todos declararon sin contradicción alguna que Angélica abandonó a Frank Chaulón, padre, en 1941; que desde julio de 1944 hasta enero de 1945 éste permaneció en los Estados Unidos recibiendo tratamiento de ataques de "delirium tremens" que le ocasionaron impotencia sexual; y que Zoilo Eduardo, nacido el 23 de junio de 1945, no podía haber sido y no era el hijo de Frank Chaulón, padre. Los demandados no presentaron prueba.

A pesar de lo antes expuesto, el tribunal sentenciador dictó sentencia declarando sin lugar la demanda enmendada en el pleito de legitimidad. El presente caso es la apelación contra dicha sentencia.

El tribunal sentenciador dejó de aplicar en la resolución del caso de impugnación de legitimidad, el lenguaje antes transcrito que cuidadosamente expusimos en el caso de *Méndez* a las páginas 785–88. Las personas envueltas en el caso tomaron todos los pasos que enumeramos en el caso de *Méndez*. Frank Chaulón, hijo, ejercitó sus derechos como uno

de los herederos legítimos de Frank Chaulón, padre, radicando una demanda enmendada impugnando la legitimidad de Zoilo Eduardo. Toda vez que María Elisa se negó a unirse a Frank Chaulón, hijo, como demandante, éste la incluyó como demandada. En la demanda enmendada Zoilo Eduardo fué incluído como demandado. Y en vista del posible conflicto de intereses de la madre y del hijo, se nombró un defensor judicial quien compareció a nombre de Zoilo Eduardo. Prueba incontrovertida y detallada fué presentada demostrativa de la imposibilidad física de que el marido tuviera acceso a su mujer durante el período crucial. Por tanto, era claramente el deber del tribunal sentenciador dictar sentencia a favor del demandante al efecto de que Zoilo Eduardo era hijo natural de Angélica.

■ El tribunal sentenciador asumió una posición diferente. No empece nuestro lenguaje del caso de *Méndez*, antes citado, advirtiendo específicamente contra tal enfoque, el Tribunal Superior *motu proprio* adujo varios fundamentos técnicos en apoyo de su sentencia desestimando la demanda. No nos detendremos a examinarlos en detalle.[4] Ninguno de ellos, según indicamos en nuestra opinión en el caso de *Méndez* a las págs. 786–88 al discutir la cuestión de prescripción, era de naturaleza tal que los demandados no pudieran renunciar-

---

[4] Dichos fundamentos eran los siguientes: (*a*) Requisito del permiso del tribunal sentenciador bajo la Regla 25 (*a*) (1) de las Reglas de Enjuiciamiento Civil para la sustitución de Frank Chaulón, hijo, como parte demandante al ocurrir la muerte de Frank Chaulón, padre; (*b*) un requisito similar de permiso para la inclusión de demandados adicionales bajo la Regla 19 (*b*) ; (*c*) la demanda original no aducía hechos suficientes constitutivos de una causa de acción; y siendo fatalmente defectuosa por no aducir tales hechos, no es susceptible de enmienda; (*d*) no puede concederse permiso para enmendar una demanda cuando el propósito de la enmienda es sustituir al único demandado por una persona diferente; (*e*) por los motivos expuestos por el tribunal sentenciador, que creemos innecesario exponer aquí, la acción no había sido interpuesta debidamente bajo los arts. 116 y 117 del Código Civil. En forma alguna insinuamos que alguno de los fundamentos expuestos por el tribunal sentenciador sea meritorio. No vemos fin práctico en discutirlos ya que los demandados no los levantaron y por consiguiente los renunciaron. Sobre esta cuestión, además de lo que ya hemos citado del caso de *Méndez*, véase el escolio 11 del mismo, pág. 788.

los de así elegirlo.    Aquí los demandados, que estaban debidamente representados, renunciaron todos estos puntos.    No era función del tribunal sentenciador escudriñar los autos y a iniciativa propia declarar sin lugar una demanda de esta clase por fundamentos tan técnicos que pueden ser y fueron renunciados por las partes, particularmente si el resultado sería privar a un menor de su día en corte para probar su reclamación en cuanto a su verdadero *status*.

▪    Para evitar posible confusión en el futuro, señalamos un punto final.    Si el caso de *Méndez* hubiera surgido más recientemente, el resultado hubiera sido diferente.    Con posterioridad a dicho caso, una mayoría de este Tribunal ha resuelto que, no obstante el art. 116 del Código Civil, procede un pleito de filiación alegando que un menor nacido después de la fecha de vigencia de la Ley núm. 229 de 1942 era un hijo natural, no empece el hecho de que su madre estuviera casada con otro hombre durante el período crucial.    *Agosto* v. *Javierre*, supra.[5]    Obviamente, debido a nuestra resolución en contrario en el caso de *Méndez*, para esa fecha privamos a Zoilo Eduardo de su derecho a proseguir con su pleito de filiación.    De esto surge que, para evitar una injusticia manifiesta, la doctrina anterior del caso de *Méndez, más su corolario*, debe imperar a base de una teoría análoga a la de la "ley del caso".    *Cf. Commissioner* v. *Sunnen*, 333 U. S. 591; *Developments in the Law-Res Judicata*, 65 Harv. L. Rev. 818, 822, 843; *Estado Libre Asociado* v. *Ocean Park Development Co.*, ante pág. 158, (1956).

Como ya se ha indicado, la decisión anterior en el caso de *Méndez* fué al efecto de que bajo el art. 116 del Código Civil solamente el marido o sus legítimos herederos podían impugnar la legitimidad de Zoilo Eduardo, obligándonos con ello a confirmar la desestimación de la demanda de filiación en ausencia de una sentencia en un pleito de legitimidad instado por

---

[5] El 19 de enero de 1956 dictamos resolución declarando sin lugar una moción de reconsideración en el caso de *Javierre*.    Dicha resolución dice que el Juez Asociado Sr. Saldaña está conforme con la opinión emitida en dicho caso por el Juez Asociado Sr. Negrón Fernández.

el marido o por sus herederos legítimos. Más importante para nuestros fines, el corolario de la misma, según se indica en el lenguaje arriba citado a las páginas 783-4 del caso de *Méndez*, fué que la defensa de *res judicata* no impediría un nuevo pleito de filiación radicado por Zoilo Eduardo contra Zoilo Méndez, una vez dictada sentencia válida (que dictaremos en este caso) en un pleito de impugnación de legitimidad instado por el marido o por sus herederos legítimos. Esta última doctrina—el corolario—será de aplicación contra la defensa de *res judicata* en cualquier acción futura de filiación.

En el caso de *Méndez* sostuvimos que el art. 116 privaba temporalmente a Zoilo Eduardo de su acción de filiación. Es verdad que más tarde repudiamos dicha regla en el caso de *Javierre*. Pero difícilmente podemos aplicar este caso a Zoilo Eduardo, en tanto en cuanto respecta a la defensa de *res judicata* de la acción de filiación, en vista del hecho de que las partes interesadas, descansando en el caso de *Méndez*, trataron de obtener el remedio que allí sugerimos, consiguiendo primero una sentencia válida en el caso de impugnación de legitimidad antes de instituir un nuevo caso de filiación. Únicamente a los fines de este caso específico, necesariamente debemos adherirnos al criterio expresado en el caso de *Méndez* al efecto de que cualquier futuro pleito de filiación radicado por Zoilo Eduardo contra Méndez no estará sujeto a la defensa de *res judicata* predicada en nuestra sentencia confirmando la desestimación de la demanda de filiación en el caso de *Chabrán* v. *Méndez*, supra. Resolver lo contrario sería tenderle una trampa a Zoilo Eduardo ya que la mayoría del Tribunal cambió sus puntos de vista en cuanto al art. 116 según éstos expusieron en el caso de *Méndez* cuando se resolvió el caso de *Javierre*.

Zoilo Eduardo Chabrán nació en 1945. Desde 1950, a través de su madre, Angélica Chabrán, ha estado tratando de llegar a los tribunales para probar, si puede, su alegación de que es hijo natural de Zoilo Méndez. En este caso despejamos la nebulosa que anteriormente creímos existía contra su

acción en virtud del art. 116 del Código Civil. Ya es hora de que Zoilo Eduardo reciba su día en corte. Cuando se radique, si es que se radica, un nuevo pleito de filiación a su nombre contra Méndez, los tribunales deberán proceder a resolverlo sin más dilación.

*La sentencia del Tribunal Superior será revocada y se dictará nueva sentencia declarando que Zoilo Eduardo Chabrán no es hijo legítimo de Frank Chaulón y sí hijo natural de Angélica Chabrán Hernández.*

El Juez Asociado Sr. Sifre está conforme con el resultado.