EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Hilda Esther Bidot Almodóvar<br>     Demandante-Recurrida<br><br>                   v.<br><br> Victoriano Moisés Urbino Valle<br> y San Juan Racing Association, Inc.<br>     Demandados-Recurridos<br><br>                   v.<br><br> American International Insurance<br> Company of Puerto Rico<br>     Demandada-Peticionaria | Certiorari<br><br>2002 TSPR 151<br><br>158 DPR _____ |

Número del Caso: CC-2000-431


Fecha: 13 de diciembre de 2002

Tribunal de Circuito de Apelaciones:
                    Circuito Regional I

Juez Ponente:
                    Hon. Dolores Rodríguez de Oronoz

Abogados de la Parte Peticionaria:
                    Lcdo. Héctor F. Oliveras
                    Lcda. Isabel M. Guillén Bermúdez

Abogado de la Parte Recurrida:
                    Lcdo. Virgilio Mainardi Peralta


Materia: Daños y Perjuicios


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Hilda Esther Bidot Almodóvar

    Demandante-Recurrida

       v.

Victoriano Moisés Urbino Valle               CC-2000-431
y San Juan Racing Association, Inc.

    Demandados-Recurridos

American International Insurance
Company of Puerto Rico

    Demandada-Peticionaria

Opinión del Tribunal emitida por la Juez Asociada señora NAVEIRA DE RODÓN

San Juan, Puerto Rico, a 13 de diciembre de 2002

El presente caso surge como una secuela de la Opinión emitida por este Tribunal en Urbino v. San Juan Racing Assoc., Inc., 141 D.P.R. 210 (1996).[1]

Hoy nos toca resolver si el pago de una sentencia por la parte demandada en compensación por unos daños gananciales, efectuado éste en su totalidad al ex cónyuge que entabló la demanda cuando el matrimonio estaba vigente, extinguió la obligación del demandado en cuanto al ex cónyuge que no intervino como parte en dicho pleito. Al resolver, se tomará

---

[1] En esa ocasión resolvimos que "un cónyuge tiene la capacidad legal necesaria para reclamar los daños gananciales sin tener que incluir o mencionar en la demanda la sociedad de gananciales y al otro cónyuge."

en consideración que en ningún momento se le notificó ni al tribunal ni a la parte demandada que el vínculo matrimonial se había disuelto.

A continuación exponemos los hechos pertinentes conforme surgen de los documentos que obran en autos.

I

La señora Hilda Esther Bidot Almodóvar (en adelante Sra. Bidot) y el señor Victoriano Moisés Urbino Valle (en adelante Sr. Urbino) contrajeron matrimonio bajo el régimen de la sociedad legal de gananciales el 27 de abril de 1963. Durante la vigencia de su matrimonio, el Sr. Urbino presentó una acción de daños y perjuicios contra San Juan Racing Association, Inc. (en adelante San Juan Racing) y su aseguradora American International Insurance Company of Puerto Rico (en adelante American) por los daños sufridos por una yegua de carreras propiedad de la sociedad legal de gananciales compuesta por él y la Sra. Bidot.

Durante el trámite del caso, y previo a que el tribunal de instancia dictara sentencia en el caso de daños y perjuicios, el 2 de febrero de 1990, el Sr. Urbino y la Sra. Bidot se divorciaron por consentimiento mutuo.[2] Como parte de los procedimientos en el caso de divorcio, éstos sometieron al tribunal una estipulación hecha ante notario público y firmada por ambos, en la cual se relacionaban los bienes que cada uno habría de conservar como resultado de la división de la sociedad de gananciales habida entre ambos. Con respecto a los caballos

---

[2] Caso Civil RF90-304, Tribunal Superior, Sala de Bayamón.

de carrera y el establo "U Racing", los esposos estipularon que dichos bienes, valorados en $134,000.00, quedarían como propiedad del Sr. Urbino. **Nada se mencionó en la estipulación acerca de la forma en que se adjudicaría a una o ambas partes el monto de la sentencia de daños y perjuicios que pudiese recaer en su día a favor de la sociedad legal de gananciales en el pleito que se encontraba pendiente ante el tribunal de instancia.**

Aproximadamente tres (3) años más tarde, el 25 de junio de 1993, el tribunal de instancia dictó sentencia en cuanto a la reclamación de daños y perjuicios. Condenó a las codemandadas San Juan Racing y American a pagar a la parte demandante, Sr. Urbino, la cantidad de $460,000.00 por el valor de la yegua, $2,198.00 por gastos médicos y $500.00 por concepto de honorarios de abogado, más las costas del pleito.

Inconformes, San Juan Racing y American acudieron ante nos y solicitaron la revisión de esta sentencia. Argumentaron que el descubrimiento de prueba había revelado que el Sr. Urbino era casado y que siendo la Sra. Bidot parte indispensable en el pleito, procedía la desestimación de la demanda. Expedimos el recurso y resolvimos que el Sr. Urbino tenía la capacidad legal necesaria para reclamar daños de naturaleza ganancial en virtud de las disposiciones de los Arts. 91 y 93 del Código Civil de Puerto Rico, 31 L.P.R.A. § 284 y 286, sin que fuera necesario incluir o mencionar en la demanda a la sociedad legal de gananciales y al otro cónyuge como partes en el pleito, pues la prueba había revelado el carácter ganancial de la reclamación del Sr. Urbino. Urbino v. San Juan Racing Assoc., Inc., supra. Nada informó la parte demandante al Tribunal o a las

codemandadas San Juan Racing y American, sobre el divorcio, la disolución de la sociedad de bienes gananciales y la creación de una comunidad de bienes, en cuanto a aquellos bienes gananciales no incluidos entre la estipulación sobre división de gananciales. Devolvimos el caso para que continuasen los trámites de forma consistente con lo que habíamos resuelto.

Posteriormente, American pagó al Sr. Urbino el importe de la sentencia recaída en contra de San Juan Racing ascendente a $598,000.00. Un año más tarde, la Sra. Bidot presentó una demanda contra el Sr. Urbino, la San Juan Racing y American. Reclamó al Sr. Urbino el pago de la mitad de lo cobrado en virtud de la naturaleza ganancial de dicha reclamación y como consecuencia de haber pactado, a través de una estipulación, que se liquidarían por mitad los bienes de la sociedad de bienes gananciales. Reclamó además, a American y a San Juan Racing, el pago de la mitad de la sentencia que le correspondía y adujo que el pago hecho al Sr. Urbino no extinguió su obligación para con ella. En consecuencia, solicitó que se declarara a los codemandados, Sr. Urbino, American y San Juan Racing, solidariamente responsables por el pago de la suma de dinero que se le adeudaba, ascendente a $299,000.00.

Días después de entablada la demanda, la Sra. Bidot radicó una moción de sentencia sumaria parcial. En la misma, solicitó que el tribunal dictara sentencia sumaria contra el Sr. Urbino[3] ordenándole a éste el pago de la cantidad reclamada en la demanda pues no había controversia en cuanto a que el Tribunal Supremo

---

[3] No solicitó sentencia sumaria en cuanto a los demás codemandados pues éstos habían sido recientemente emplazados y aun no habían contestado la demanda.

había decretado que la compensación en daños era de naturaleza ganancial y que al momento de recaer la sentencia y como consecuencia del divorcio entre ella y el Sr. Urbino, había surgido en cuanto a esta cantidad, una comunidad de bienes de la cual le correspondía el 50% de los haberes. Esto incluía la mitad de lo pagado por American al Sr. Urbino. Con esta solicitud, la Sra. Bidot acompañó copia de la estipulación presentada por los entonces esposos al tribunal en el caso de divorcio por consentimiento mutuo. También acompañó un documento, aparentemente firmado por ambas partes en la misma fecha en que fue suscrita y juramentada la estipulación. En éste se indicó que "respecto a una reclamación pendiente por accidente de la Dindu-U, cualquier suma de dinero que se obtenga de la misma [será] [d]ividida de por mitad entre nosotros..."

El Sr. Urbino se opuso a la moción de sentencia sumaria. Alegó que jamás había firmado acuerdo o estipulación privada con la parte demandante en perjuicio de lo que legalmente se había estipulado mediante la sentencia de divorcio. Adujo además que por haber controversias sustanciales de hechos que involucraban no sólo a los ex esposos, sino también a la San Juan Racing y su compañía aseguradora, American, no procedía resolver la demanda en cuanto a su persona mediante el mecanismo procesal extraordinario de sentencia sumaria.

El tribunal de instancia dictó sentencia sumaria parcial ordenando al Sr. Urbino pagar a la Sra. Bidot la mitad del pago hecho a éste por American, $299,000.00. Entendió el tribunal que al momento de ocurrir el pago de la sentencia lo que existía entre el Sr. Urbino y la Sra. Bidot era una comunidad de bienes

en la cual cada ex cónyuge tenía una cuota pro indivisa correspondiente al 50% por razón del origen ganancial de la reclamación en daños y perjuicios. Por tanto, concluyó que el Sr. Urbino debía pagar a la Sra. Bidot la mitad de lo que éste recibió de San Juan Racing y su compañía aseguradora. De esta determinación, el Sr. Urbino acudió en revisión ante el Tribunal de Circuito de Apelaciones (en adelante Tribunal de Circuito) el que confirmó la sentencia apelada. Finalmente, el Sr. Urbino acudió ante nos mediante recurso de certiorari, que fue denegado.

Posteriormente, la Sra. Bidot radicó una segunda moción de sentencia sumaria, esta vez contra San Juan Racing y American. Alegó que habiendo surgido una comunidad de bienes entre ella y el Sr. Urbino, el importe de la sentencia pertenecía a ambos pro indiviso y que por haber hecho la San Juan Racing el pago en su totalidad exclusivamente al Sr. Urbino, con pleno conocimiento del carácter ganancial de la reclamación, dicho pago no había extinguido la obligación de la San Juan Racing para con ella.

Las codemandadas comparecieron oponiéndose. Adujeron que desconocían que los esposos Bidot-Urbino se hubiesen divorciado, y que ninguno de éstos les informó de ese hecho. Señalaron que el pago se le hizo al Sr. Urbino en la creencia de que éste continuaba en su carácter de coadministrador de la sociedad de gananciales. Añadieron que fueron los propios ex esposos los que, con su silencio, indujeron a error a la parte demandada. En consecuencia, solicitaron que se dictara sentencia sumaria a su favor desestimando la demanda presentada

por la Sra. Bidot. Posteriormente, las codemandadas presentaron una demanda contra coparte contra el Sr. Urbino. Adujeron que éste había evadido todos los intentos realizados por la Sra. Bidot para cobrar su acreencia, y que por esa razón ésta había radicado la presente acción en cuanto a las codemandadas. Señalaron que el Sr. Urbino debía responderle a la parte demandante o en su defecto, devolver o satisfacer a la San Juan Racing y a su compañía aseguradora la cantidad de $299,000.00 de los cuales se había apropiado a sabiendas de que dicha suma no le correspondía.

El 14 de septiembre de 1999, el tribunal de instancia dictó sentencia contra las codemandadas San Juan Racing y American. Concluyó que las codemandadas venían obligadas a realizar el pago dividido según las cuotas de cada ex cónyuge, y que aun desconociendo el hecho de la disolución del matrimonio, las codemandadas venían entonces obligadas a realizar el pago a la persona a favor de la cual hubiese quedado constituida la obligación, fueren comuneros o integrantes de una sociedad conyugal. En consecuencia, el foro de instancia concluyó que el pago hecho al Sr. Urbino no liberó a las codemandadas de su obligación para con la Sra. Bidot, por lo que ordenó a éstas a pagar $299,000.00 a la señora Bidot por concepto de la mitad del importe total de la sentencia de daños y perjuicios, más las costas, el interés legal correspondiente y honorarios de abogado. Igualmente, el tribunal de instancia declaró con lugar la demanda contra coparte presentada por la San Juan Racing y American, por lo que concluyó que el Sr. Urbino debía reembolsarles igual suma del exceso de lo pagado por las

codemandadas más el interés legal correspondiente desde el momento en que se efectuó el pago en exceso.

Inconforme, American recurrió al Tribunal de Circuito. Éste confirmó la determinación del tribunal de instancia. Concluyó que al haber entregado y adjudicado el pago al Sr. Urbino exclusivamente, aun cuando conocía que tal pago le correspondía a la sociedad legal de gananciales, American realizó un pago equivocado que no extinguió su obligación.

Denegada la reconsideración, American recurrió ante nos mediante recurso de certiorari, señalando como único error el siguiente:

> Erró el Tribunal Apelativo al no reconocer que el pago hecho por la apelante [aquí peticionaria] extinguió la deuda.

Acordamos revisar y expedimos el recurso. Ambas partes han comparecido y con el beneficio de sus argumentos resolvemos.

II

En reiteradas ocasiones hemos expresado que la sociedad de gananciales es una entidad separada y distinta de los cónyuges que la componen, con personalidad jurídica propia. Véanse: Vega Ortiz v. Bonilla Vázquez, res. el 12 de marzo de 2001, 153 D.P.R. _____, 2001 T.S.P.R. 35, 2001 J.T.S. 38; Reyes Castillo v. Cantera Ramos, Inc., 139 D.P.R. 925 (1996); Int'l Charter Mortgage Corp. v. Registrador, 110 D.P.R. 862 (1981); Rovira Tomás v. Srio. de Hacienda, 88 D.P.R. 173 (1963); Echevarría v. Despiau, 72 D.P.R. 472 (1951).

En Puerto Rico, a partir de la reforma de 1976 del Código Civil, ambos cónyuges son administradores de la sociedad de bienes gananciales con capacidad para representarla. Ley Núm. 51 de 21 de mayo de 1976 (31 L.P.R.A. secs. 284, 286, 3661, 3671-3672 y 3717); Blas v. Hospital Guadalupe, 146 D.P.R. 267 (1998); Urbino v. San Juan Racing Assoc., Inc., supra; Reyes Castillo v. Cantera Ramos, Inc., supra.

A esos fines, el Artículo 91 del Código Civil, 31 L.P.R.A. sec. 284, en lo pertinente, dispone que, salvo estipulación en contrario, "[a]mbos cónyuges serán los administradores de los bienes de la sociedad conyugal". Por su parte, el Artículo 93 del Código Civil, 31 L.P.R.A. sec. 286, establece que "cualquiera de los cónyuges podrá representar legalmente a la sociedad conyugal." Dispone, además, el citado Artículo 93 que "[c]ualquier acto de administración unilateral de uno de los cónyuges obligará a la sociedad legal de gananciales y se presumirá válido a todos los efectos legales."

Según nos comenta la Profesora Migdalia Fraticelli Torres, en su artículo *Un nuevo acercamiento a los regímenes económicos en el matrimonio: La sociedad legal de gananciales en el Derecho Puertorriqueño,* 29 Rev. Jur. U.I.P.R. 413, 449 (1995), la presunción establecida en el Artículo 93 del Código Civil "tiene el efecto práctico de dar legitimación a ambos consortes para actuar en nombre de la sociedad, lo que favorece la posición social y jurídica de la mujer, **pero, a un mismo tiempo favorece y protege los intereses de los terceros que contratan con la sociedad."** (Énfasis suplido.)

En *Urbino* v. *San Juan Racing Assoc., Inc.*, *supra*, expresamos que con las enmiendas de 1976, "la Asamblea Legislativa equiparó la facultad de ambos cónyuges para administrar la sociedad legal de gananciales e incorporó el principio de coadministración y representación legal. [Cita omitida] *Desde entonces, individualmente, tanto el esposo como la esposa tienen capacidad de jure para representar a la sociedad de gananciales en los tribunales*."

Ahora bien, una vez disuelto el matrimonio, concluye la sociedad legal de gananciales. Art. 1315 del Código Civil, 31 L.P.R.A. sec. 3631. Es entonces cuando nace una comunidad de bienes, de la cual los ex cónyuges son comuneros hasta que se liquide la sociedad. *Soto López* v. *Colón Meléndez*, 143 D.P.R. 282 (1997). La comunidad de bienes que así surge no se rige por las normas de la sociedad de gananciales sino por las normas referentes a la copropiedad. Art. 326 del Código Civil, 31 L.P.R.A. sec. 1271; *Calvo Mangas* v. *Aragonés Jiménez*, 115 D.P.R. 219 (1984).

Nuestro Código Civil dispone que al disolverse el matrimonio, el marido y la mujer harán suyos por mitad las ganancias o beneficios obtenidos por cualquiera de ellos durante el mismo matrimonio. 31 L.P.R.A. sec. 3621. De la misma manera, "lo generado durante el término de la comunidad en liquidación es por partes iguales, ya que cada comunero participa en los beneficios y cargas de la comunidad en proporción a su cuota." (Citas omitidas.) *González* v. *Quintana*, 145 D.P.R. 463 (1998).

En el caso de autos no está en controversia el hecho de que para el 25 de junio de 1993, fecha en que el tribunal de instancia dictó sentencia en el pleito original de daños y perjuicios condenando a la San Juan Racing y a American a satisfacer al Sr. Urbino, como administrador de la sociedad de bienes gananciales, la suma de $598,000.00,[4] ésta ya no existía. Para esa fecha ya se había liquidado la mayor parte de la sociedad de bienes gananciales y había surgido una comunidad de bienes entre el Sr. Urbino y la Sra. Bidot, en cuanto a aquel bien no incluido en la estipulación sometida para la liquidación de la sociedad de bienes gananciales en el caso de divorcio por consentimiento mutuo, la demanda en daños y perjuicios presentada por el Sr. Urbino, como el entonces administrador de la sociedad de bienes gananciales, contra San Juan Racing y American. El matrimonio Urbino-Bidot quedó disuelto mediante sentencia de divorcio por consentimiento mutuo dictada el 2 de febrero de 1990.

Como mencionáramos anteriormente, en el primer pleito que se suscitó sobre esta controversia, Urbino v. San Juan Racing Assoc., Inc., supra, este Tribunal determinó que el Sr. Urbino tenía la capacidad legal necesaria para reclamar daños gananciales sin tener que incluir o mencionar en la demanda a la sociedad de gananciales o a su cónyuge. En ese caso se dictó sentencia "resolviendo y estimando la acción y compensación

---

[4] Esta sentencia fue confirmada por el Tribunal Supremo mediante Opinión emitida el 28 de junio de 1996.

como perteneciente a la Sociedad Legal de Gananciales Urbino-Bidot."

Resulta importante señalar, que de nuestro expediente no surge que la Sra. Bidot o el Sr. Urbino le hubiesen informado al tribunal, o a las codemandadas, San Juan Racing y American, el hecho de que durante el trámite del caso ellos se habían divorciado. Tampoco surge que la Sra. Bidot con posterioridad al divorcio hubiese solicitado intervenir en el pleito.

Así las cosas, la aquí peticionaria, American, pagó el importe total de la sentencia recaída en contra de la San Juan Racing a quien, a tenor con los documentos que obraban en el expediente del tribunal, fungía como administrador de la sociedad de bienes gananciales, el Sr. Urbino.

Ahora nos corresponde determinar si el pago efectuado por la peticionaria al Sr. Urbino extinguió su obligación para con la sociedad legal de gananciales Urbino-Bidot o si, por el contrario, el pago estuvo mal hecho, pudiendo así la Sra. Bidot reclamar y recobrar su parte directamente de American.

En el presente caso tanto el foro de instancia como el Tribunal de Circuito determinaron que el pago hecho al Sr. Urbino no liberó a la peticionaria de su obligación para con la Sra. Bidot. Basaron su decisión en que aun desconociendo ésta el hecho de la disolución del matrimonio Urbino-Bidot, lo que procedía era el pago conjunto a los integrantes de la sociedad legal de gananciales. No podemos estar de acuerdo. Veamos.

Sostiene la peticionaria que, siguiendo el mandato del Tribunal Supremo, procedió a satisfacer el monto de la sentencia al Sr. Urbino, quien era el único demandante en dicho pleito, bajo el entendido de que éste todavía estaba casado con la Sra. Bidot y era el cónyuge que representaba a la sociedad de bienes gananciales Urbino-Bidot en esta reclamación. Es decir, la peticionaria actuó bajo la premisa de que la sociedad legal de gananciales Urbino-Bidot aún existía. Del expediente no surge documento alguno que hubiese alertado a las codemandadas San Juan Racing y American de que la sociedad de bienes gananciales ya no existía.

Para atender adecuadamente esta controversia del pago, resulta pertinente analizar las disposiciones del Artículo 1118 del Código Civil, el cual dispone: "El pago hecho de buena fe al que estuviere en posesión del crédito liberará al deudor." 31 L.P.R.A. sec. 3168.

En <u>Rodríguez</u> v. <u>Banco Popular</u>, 66 D.P.R. 781 (1946), tuvimos la oportunidad de interpretar el citado artículo. En ese caso se trataba de una reclamación presentada por los herederos legítimos de un causante contra un banco, al haber efectuado éste un pago de fondos en depósito a la persona revestida de las condiciones externas de acreedor verdadero por haber sido declarada por un tribunal competente heredera del dueño anterior del crédito. Allí, citando a Manresa, expresamos:

> Serán casos de aplicación del art. 1164 y consiguiente eficacia del pago: **el hecho al acreedor**

**primitivo por un deudor que no conozca la cesión del crédito ni la incapacidad sobrevenida a aquél... .** En estos casos, **ni puede perjudicar al deudor que aquéllos a quienes pague sean luego vencidos en juicio, ni a los que en éste triunfen quedará otro medio que reclamar al que cobró indebidamente.** Ibid, págs. 784-785. (Bastardillas omitidas; comillas internas omitidas y énfasis suplido.)

En su consecuencia, resolvimos que el pago hecho en ese caso liberó al deudor, ya que "[e]l banco no hizo otra cosa que pagar de buena fe a la persona que había sido declarada heredera por una corte, y no tenía facultad para desatender lo resuelto ni le competía ir a la corte a alegar que la resolución dictada estaba viciada de nulidad." Ibid, pág. 786.

En la situación de autos están presentes circunstancias similares a las del caso antes citado. **En el presente caso American pagó a la persona que según lo resuelto por este Tribunal (Urbino v. San Juan Racing Assoc., Inc., supra) estaba capacitada para representar la sociedad legal de gananciales Urbino-Bidot en relación con esa reclamación. Más importante aún, el pago se hizo bajo la creencia de que dicha sociedad de gananciales aún existía.** En vista de ello, entendemos que el pago liberó a American de su obligación para con la sociedad legal de gananciales, y por ende para con uno de sus integrantes, la Sra. Bidot, ya que American no tenía facultad para desobedecer el mandato de este Tribunal, ni tampoco venía obligada a verificar si el Sr. Urbino todavía estaba capacitado para representar la sociedad legal de gananciales Urbino-Bidot, o si ésta última aún existía.

Anteriormente, hemos reconocido que existen casos en los cuales la mejor práctica es incluir a ambos cónyuges como partes, sirviéndoles emplazamientos individuales, evitando así

una lesión de los derechos del cónyuge omitido como parte en la demanda. Así pues, en Carrero Suárez v. Sánchez López, 103 D.P.R. 77 (1974), nos enfrentamos a un caso en el cual una concubina de un hombre casado presentó una acción solicitando la disolución y liquidación de la comunidad de bienes habida entre ella y su concubino casado. Emplazado el concubino, como único demandado, no hizo alegación alguna, y dos años y medio (2 1/2) más tarde, se dictó sentencia en rebeldía por medio de la cual se le adjudicó a la concubina demandante "la mitad del valor en el mercado de las tres fincas urbanas objeto de la reclamación." (Comillas internas omitidas.) Al revocar dicho dictamen, resolvimos que, la esposa del concubino debió haber sido traída al pleito como parte indispensable, emplazándola y notificándola de todos los procedimientos evitando de esa manera que sus derechos resultaran perjudicados. Bajo estas circunstancias no se podía confiar en que el esposo defendiese adecuadamente los intereses de la sociedad de bienes gananciales y de su esposa. De otra parte, en Alicea Álvarez v. Valle Bello, Inc., 111 D.P.R. 847 (1982), expresamos "la necesidad de incluir ambos cónyuges como partes y servirles emplazamientos individuales en acciones que afectan el patrimonio de la sociedad de gananciales obviando el riesgo de nulidad, ante la posibilidad de que la defensa del interés social por uno solo no se ejercite con la debida eficiencia, o la existencia de incompatibilidad entre los cónyuges respecto a la defensa de su interés dentro de una sociedad que ambos gobiernan con igual autoridad."

La situación en el caso de autos es una muy particular y distinta a los casos previamente discutidos. Del expediente no surge alegación ni prueba alguna de que el Sr. Urbino no defendiera adecuadamente en el pleito de daños y perjuicios los intereses de la sociedad legal de gananciales Urbino-Bidot. Sin embargo, no cabe duda de que la posición de la Sra. Bidot en relación con sus intereses y los del Sr. Urbino cambió luego del divorcio. Luego del divorcio existía una verdadera posibilidad de que sus intereses no fueran adecuadamente representados por el Sr. Urbino. Ante esta posibilidad la Sra. Bidot debió haber solicitado la intervención en el pleito, e informar que la sociedad legal de gananciales ya no existía. La intervención de parte de la Sra. Bidot ciertamente hubiese evitado que el pago de la sentencia se hubiese efectuado en su totalidad al Sr. Urbino.

Por otro lado, somos del parecer que la Sra. Bidot no puede pretender válidamente, en esta etapa de los procedimientos, cobrar la parte que le corresponde de dicha sentencia, directamente de American, cuando, teniendo conocimiento de la pendencia de una acción en la que se reclamaban daños gananciales, y teniendo además, amplia oportunidad para solicitar la intervención en dicho pleito para defender sus intereses, optó por cruzarse de brazos.[5]

Resulta importante destacar que desde la fecha en que se dictó la sentencia de divorcio, el 2 de febrero de 1990, hasta

---

[5] Del acuerdo privado suscrito entre el Sr. Urbino y la Sra. Bidot el 25 de enero de 1990, surge que al menos desde esta fecha, ésta última tenía conocimiento de que se encontraba pendiente ante los tribunales una reclamación sobre un bien ganancial y

la fecha en que el Tribunal Supremo confirmó el dictamen de instancia en el pleito de daños y perjuicios, transcurrieron aproximadamente seis (6) años.  Sin embargo, no fue hasta aproximadamente un (1) año después de resuelta la controversia y de que American verificara el pago de la sentencia, que la Sra. Bidot interpuso la demanda en contra del Sr. Urbino, la San Juan Racing y American, reclamando, **por primera vez**, su derecho a la mitad de la compensación concedida por el tribunal.

En resumen, de lo anterior podemos colegir lo siguiente: durante los seis (6) años que duró la tramitación del pleito luego de disuelto el matrimonio Urbino-Bidot, la Sra. Bidot teniendo conocimiento del mismo y conociendo que el Sr. Urbino ya no podía representar adecuadamente sus intereses, no le informó ni al tribunal ni a las codemandadas San Juan Racing y American, que la sociedad legal de gananciales Urbino-Bidot había dejado de existir.  Tampoco solicitó intervenir en el pleito de manera que sus intereses quedaran protegidos.  El desinterés y abandono total de la reclamación ganancial de parte de la Sra. Bidot fue la que propició el que el pago se le hiciese sólo al Sr. Urbino.  El desconocimiento del tribunal y de las codemandadas San Juan Racing y American de que el matrimonio Urbino-Bidot se había disuelto, combinado con el hecho de que este Tribunal había reconocido la capacidad de cualquiera de los cónyuges para representar la sociedad legal de gananciales en los tribunales, justificaron el que el pago total de la sentencia se hiciera únicamente al Sr. Urbino.

---

que conocía, además, de su derecho a la mitad de la suma que fuera concedida por el tribunal en su día.

Por todo lo anterior, concluimos que la peticionaria American no pagó mal ni indebidamente.

En adición, resolvemos que en casos como el de autos, de reclamaciones de la sociedad de bienes gananciales, en que ni las partes demandadas ni el tribunal tienen conocimiento de que el matrimonio se ha disuelto, el ex cónyuge que no es parte en el pleito debe informarle al tribunal este cambio de circunstancia y solicitar la intervención para de esta forma proteger sus derechos. El único remedio disponible para el ex cónyuge que decide no intervenir en el pleito y luego resulta afectado, es la reclamación en contra del ex cónyuge que compareció como parte demandante y cobró indebidamente la mitad de la sentencia que le correspondía al otro ex cónyuge. Bajo estas circunstancias, el ex cónyuge que resulte perjudicado no puede reclamarle al tercero que, confiando en la capacidad que tienen ambos cónyuges a la luz del derecho vigente para actuar a nombre de la sociedad legal de gananciales, realizó el pago en su totalidad al único cónyuge que compareció como administrador de la sociedad de bienes gananciales y reclamó como parte demandante lo que a ésta se le debía.

En su consecuencia, la Sra. Bidot está impedida de cobrar directamente de American o San Juan Racing la porción a la que a tenor con la sentencia parcial dictada por el foro de instancia, tiene derecho del monto de la sentencia ya satisfecha por dichas partes al Sr. Urbino.

Por los fundamentos antes expuestos, procede revocar tanto la sentencia emitida por el Tribunal de Circuito como la dictada por el foro de instancia, desestimar la reclamación instada

contra San Juan Racing y American y devolver el caso para que continúen los procedimientos de forma compatible con lo aquí resuelto.


                        MIRIAM NAVEIRA DE RODÓN
                             Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Hilda Esther Bidot Almodóvar

    Demandante-Recurrida

      v.

Victoriano Moisés Urbino Valle          CC-2000-431
y San Juan Racing Association, Inc.

    Demandados-Recurridos

American International Insurance
Company of Puerto Rico

    Demandada-Peticionaria

SENTENCIA

San Juan, Puerto Rico, a 13 de diciembre de 2002

Por los fundamentos expuestos en la Opinión que antecede, se dicta sentencia revocando tanto la sentencia emitida por el Tribunal de Circuito de Apelaciones como la dictada por el Tribunal de Primera Instancia, y se desestima la reclamación instada contra San Juan Racing Association, Inc. y American International Insurance Company of Puerto Rico. Se devuelve el caso para que continúen los procedimientos de forma compatible con lo aquí resuelto.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López concurre con el resultado sin Opinión escrita. El Juez Asociado señor Rivera Pérez disiente sin Opinión escrita.

Patricia Otón Olivieri
Secretaria del Tribunal Supremo